UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


L&B TRANSPORT, LLC

VERSUS

JERRY BUSBY

CIVIL ACTION

NO. 06-310-FJP-SCR


**RULING**

This matter is before the Court on the defendant Jerry Busby's motion for summary judgment.[1]  Plaintiff L&B Transport, L.L.C. has filed an opposition to the motion.[2]  For reasons which follow, defendant's motion for summary judgment is granted.[3]

**I.    Factual Background**

Plaintiff L&B Transport, LLC ("L&B") is a trucking company that handles dry and liquid bulk products with terminals in various locations in the United States.  Defendant Jerry Busby ("Busby") became employed by L&B in 1998 as the terminal manager for the new Creola, Alabama terminal.  On December 1, 2002, Busby signed an employment agreement written by L&B which was in effect at the time

_____

[1]Rec. Doc. No. 34.

[2]Rec. Doc. No. 37.

[3]The Court has considered all of the contentions of the parties whether or not specifically discussed in this opinion.

of Busby's resignation on February 22, 2006.[4]    This employment agreement contained a confidentiality clause regarding certain L&B information.    This agreement also required Busby to provide his "best efforts" to L&B during his employment.    Busby eventually left L&B to work for Action Resources, a competitor trucking company. This litigation ensued.

L&B alleges Busby breached his employment agreement by taking and using confidential information from the company to recruit L&B drivers and employees and to solicit customers of L&B.    More specifically, L&B contends Busby violated the confidentiality provision of the contract by taking customer lists, drivers lists and price lists, and also by failing to provide L&B with his "best efforts" during his employment.    L&B argues that Busby entered into a contract with Action Resources with the specific intent to get L&B's biggest customer - Olin Chemical - to leave L&B and go to Action Resources for $100,000.00.[5]    Further, L&B contends Action Resources contracted to provide Busby with indemnity for this action in the event he sued.

In response to plaintiff's suit, Busby denies plaintiff's allegations and contends that his employment agreement with L&B did not contain a non-solicitation or non-competition provision.    Busby notes that on the day after L&B terminated Busby, L&B's corporate

---

[4]Rec. Doc. No. 34, Exhibit 2.

[5]Deposition of Stan Wood, Rec. Doc. No. 37, Exh. 6, pp. 56-57.

representative had the employment contracts rewritten to add a non-compete provision and specifically name certain L&B customers.[6] Busby argues that if the Court granted the relief sought by L&B, he would not be able to earn a living in the transportation industry. Busby also contends that L&B has presented insufficient summary judgment evidence consisting of assumptions and speculation to support its claims against him which is insufficient proof under Rule 56 of the Federal Rules of Civil Procedure. Thus, Busby argues that L&B has failed to establish a genuine issue of material fact as to its claims and summary judgment should be granted in his favor as a matter of fact and law.

The Court now turns to a discussion of the relevant law and its application to the facts of this case.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry

---

[6]Corporate Deposition of L&B corporate representative Jody Guillory, Rec. Doc. No. 34, Exhibit 1, pp. 33-34.

[7]Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[9]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[10]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[11]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of

---

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[9]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[10]*Id.* at 1075.

[11]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

evidence.[12]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[13]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[15]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[16]  The Court now turns to a discussion of each of plaintiff's claims.[17]

---

[12]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[13]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[14]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[15]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[16]*Id.* at 248, 106 S.Ct. at 2510.

[17]The plaintiff makes several allegations regarding what items
(continued...)

**B.   The Employment Agreement between L&B and Busby**

While noncompetition covenants are disfavored in Louisiana, covenants not to disclose or use confidential information of an employer are enforceable if the information disclosed or used is in fact confidential.[18]  Also, it is clear under Louisiana law that a former employee is "allowed to rely on his memory or general knowledge and skill gained in his former employment" without violating a nondisclosure covenant.[19]  Further, "[w]hat is entitled to protection is knowledge confidentially gained, but an employer

---

[17](...continued)
Busby took and/or used from Suttles, his employer immediately preceding L&B.   The Court finds that these allegations are baseless, unsubstantiated and unsupported by the evidence submitted in the case.  These allegations are also totally irrelevant since plaintiff did not know or present evidence of the nature of Busby's employment contract with Suttles and what may or may not have been prohibited by the contract.  The Court also finds it disingenuous that L&B would attempt to use such allegations and/or actions of Busby vis-à-vis Suttles in this lawsuit in an effort to buttress L&B's claims, but apparently benefitted from the information L&B alleges Busby brought from Suttles when he came to work for L&B. If plaintiff's allegations regarding Busby's activities regarding Suttles are correct, L&B should have drafted its employment agreement accordingly to protect itself if it truly opposed Busby's alleged taking of information from Suttles rather than amending the agreements after this litigation ensued and Busby left L&B's employment.

[18]*NCH Corp. v. Broyles*, 749 F.2d 247, 253 (5th Cir. 1985).

[19]*Id.* at 254 (citing *T.G.I.Fridays, Inc. v. International Restaurant Group*, 569 F.2d 895 (5th Cir. 1978); *Servisco v. Morreale*, 312 F.Supp.103 (E.D. La. 1970); *Lamb v. Quality Inspectino Services, Inc.*, 398 So.2d 643 (La. App. 3d Cir. 1981); *Gulf Toy House,Inc. v. Bertrand*, 306 So.2d 361 (La. App. 3d Cir. 1975); *Pearce v. Austin*, 465 So.2d 868, 871 (La. App. 2d Cir. 1985).

cannot prevent his employee from using the skill or intelligence acquired through experience in the course of the employment."[20]

The defendant contends, and plaintiff concedes, that the employment agreement does not contain a non-solicitation or non-compete provision.  Thus, whether Busby in fact solicited L&B's customers and drivers is not an issue in this case because such conduct was not prohibited by the terms of the employment agreement between Busby and L&B.  Instead, the Court must determine whether Busby used confidential information of L&B to aid in his alleged solicitation of L&B's clients, and whether Busby divulged, disclosed, or communicated L&B's pricing information to Action Resources.  The Court must also determine whether Busby violated the "best efforts" provision of the contract by soliciting L&B employees to leave L&B prior to Busby's resignation from L&B.  The Court will separately address each of these issues.

### 1.  The Confidentiality Provision

The Court must first determine whether Busby violated the confidentiality clause of the employment contract by divulging, disclosing, or communicating confidential "vital information" of L&B on behalf of his new employer Action Resources.  The confidentiality provision states the following:

> 7. CONFIDENTIALITY.  Mr. Busby recognizes that L&B has and will have information regarding the following:

---

[20]*Lamb v. Quality Inspection Serv., Inc.*, 398 So.2d 643, 648 (La. App. 3d Cir. 1981).

> Customer Lists and Prices and other vital information items (collectively, "Information") which are valuable, special and unique assets of L&B. Mr. Busby agrees that Mr. Busby will not knowingly or intentionally at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior consent of L&B. Mr. Busby will protect the Information and treat it as strictly confidential.[21]

L&B alleges Busby took and used confidential information which belonged to L&B on behalf of his new employer to solicit or attempt to solicit employees, drivers, and customers from L&B. L&B further contends Busby took and used its price lists which contain the complicated formula which L&B uses in setting its prices. In response to plaintiff's contentions, defendant argues that, although he strongly denies taking or using any confidential information of L&B, the taking and/or using of such information was not prohibited by the employment contract he had with L&B. Busby also denies disclosing, divulging, or communicating any confidential or proprietary information to a third party which is prohibited by the L&B employment contract. L&B strongly disputes Busby's contention and argues that Busby did divulge or disclose the confidential information of L&B.

The Court now turns to a discussion of the specific allegations relating to the alleged breach of the confidentiality clause.

---

[21] Rec. Doc. No. 34, Exhibit 2, ¶ 7.

### a.    Customer Lists

L&B alleges that at the time of Busby's resignation, Busby took customer lists from the L&B premises in the form of Busby's Rolodex and a list or lists of customers which Malinda Causey, an L&B employee, prepared and printed for Busby.  In her deposition, Malinda Causey stated she assumed Busby carried home these items in his briefcase.[22]  L&B further alleges that a customer list was kept on an L&B computer which Busby had access to during his employment. L&B also contends that two other L&B employees, William Ross Beech and John Causey, both testified in their depositions that they prepared a customer list with contact numbers which Busby received prior to his resignation.

Busby contends the above arguments are without merit.  He relies on the testimony in L&B's corporate deposition which states that corporate representative Jody Guillory could not re-produce the customer list allegedly taken by Busby.  Further, Busby notes that Guillory admitted in his deposition that terminal managers like Busby did not have access to the list produced by L&B and Busby could not have printed or accessed that list on the computer without utilizing another L&B computer program.[23]  Finally, Busby

---

[22]Malinda Causey worked as a receptionist at the Creola, Alabama terminal and became the terminal manager when Busby resigned the position.

[23]Corporate Deposition of L&B, Rec. Doc. No. 34, Exhibit 1, pp. 108-112.

states that in Guillory's testimony, Guillory states L&B has no evidence that Busby ever printed a list from that program.[24]

The Court believes it would be helpful to set forth some factual background of Busby's employment with L&B. Busby began working for L&B at the Creola terminal in 1998 at the very inception of the Creola terminal. At the time he resigned, the Creola terminal provided services to between 25 and 30 customers.[25] Busby contends that he developed a relationship with and serviced these customers' relationships from the beginning of his employment with L&B.[26] Thus, Busby contends that he easily remembered these customers with whom he had a great deal of professional history and working relationship.

Busby claims the Rolodex he took from L&B upon his resignation was his personal property which contained his personal business contacts, some of which were obviously customers of L&B. Even so, Busby voluntarily returned the Rolodex the very next day after being asked by L&B to return the Rolodex. Busby testified in his deposition that he removed his personal information from the Rolodex before giving it the Rolodex to L&B. Busby contends L&B cannot produce any evidence that information it seeks to protect

---

[24]*Id.* at pp. 96-100.

[25]Affidavit of Jerry Busby, dated May 19, 2006, Rec. Doc. No. 34, Exhibit 5, ¶ 10.

[26]*Id.*

was missing from the Rolodex.  In fact, Guillory testified that he did not check the Rolodex upon its return because he trusted Busby to return it "just like it was."  This strongly suggests that Guillory did not believe Busby had violated the employment contract by taking his personal Rolodex with him when he resigned.[27] Furthermore, Busby argues the Rolodex is not "vital information" as defined in the confidentiality clause of the employment agreement. Plaintiff takes the position that both parties agreed the information contained in Busby's Rolodex was vital information and was a valuable, special, and unique asset of L&B.  On the other hand, Busby contends the Rolodex is not a "list" of anything nor is it L&B's property and is not covered by the relevant clause in the employment agreement.  Busby further argues that L&B has failed to produce and indeed cannot produce any evidence that Busby divulged, disclosed, or communicated a customer list to a third party, beyond the assumptions and allegations L&B has made based on speculation and conjecture.

The Court finds that the Rolodex is not the kind of "vital information" covered by the confidentiality clause which was contained in the contract.  Such a conclusion would vastly expand the language of the confidentiality clause which the parties agreed to.  In other words, considering the language of the entire contract, the Court does not believe that the parties intended to

---

[27]Corporate Deposition of L&B, p. 105, lines 3-9.

include an employee's personal property to be "vital information" within the meaning of the confidentiality clause of the contract.[28] Plaintiff also refers the Court to the deposition of Malinda Causey, wherein she stated that she printed a customer list for Busby which he kept in his briefcase.  When Busby left L&B on the last day of his employment, Malinda Causey testified she saw Busby carry his briefcase with him, and she never discovered the list she copied in the office.  Thus, Causey assumes that Busby took the list with him on the last day of his employment at L&B.[29]

The Court finds that a close examination of Malinda Causey's testimony is not as persuasive as plaintiff represents.  Malinda Causey's testimony reflects that she never typed a formal all-inclusive list of L&B customers that could be given to Busby.[30]  In fact, not all dispatchers gave Malinida Causey a handwritten list of their own customer contacts.  One dispatcher did not provide Malinda Causey with any list.  Furthermore, Malinda Causey testified she never "got around" to typing a formal list of all

---

[28]The Court notes that it is not holding that a Rolodex may never constitute confidential proprietary information of a company; however, the facts of this case and the language of the employment agreement at issue do not support such a holding in this case.

[29]Deposition of Malinda Causey, Rec. Doc. No. 34, Exhibit 4, p. 47.

[30]*Id.* at pp. 47-48.

customers and simply kept "them all paper clipped together."[31]  Her testimony establishes that L&B not only did not take any action to protect and maintain such proprietary information in any formal manner, but failed to have an all inclusive customer list that could have been given to the defendant.   There is absolutely no evidence that Malinda Causey gave Busby the lists she "paper clipped together."  Thus, the Court finds that plaintiff has failed to prove that there ever was an actual customer list which could have been taken.   Furthermore, the manner in which these "lists" were created and "maintained" establishes that L&B was not serious about safeguarding such information it now claims it believed to be "vital," "confidential," and a "unique asset" of L&B.  The Rolodex was Busby's personal property and was not issued to him by L&B. Just because the Rolodex might have contained information which could also appear on an L&B customer list does not mean that the Rolodex itself constitutes a "special and unique asset of L&B."  It is important to note that the contents of the Rolodex which defendant returned to the plaintiff were not introduced into the record, nor is there any evidence that plaintiff sought to subpoena the records defendant removed from the Rolodex.   Thus, the Court must rely on speculations and assumptions to rule in plaintiff's favor.   This it cannot and will not do.

---

[31]*Id.* at p. 57, line 20; p. 58, lines 10-11.

In *Weighing & Control Services, Inc. v. Bert Williams*,[32] the plaintiff moved for a preliminary injunction enjoining the defendant former employee from soliciting the business of the plaintiff's clients. The defendant had resigned from a position with plaintiff to become an independent contractor for Braden Enterprises, a competitor. Plaintiff alleged the defendant breached the Louisiana Unfair Trade Practices Act ("LUTPA"),[33] and also breached his fiduciary duty owed to plaintiff.[34]

The plaintiff and Braden Enterprises repaired and serviced industrial machines used for weighing and measuring bulk materials. The defendant was the service technician who drove to the various industrial plants and serviced the machines. The plaintiff did not allege that it had a customer list, but did allege that the defendant knew who the customers were from working on their machines and contacting them regarding his new employment.[35]

The defendant argued that there was no customer list in

---

[32]1989 WL 6011 (E.D. La., Jan. 24, 1989). The Court recognizes that the case before the Court does not involve an allegation of a violation of LUTPA or that the lists at issue are trade secrets as discussed in *Weighing & Control*; however, the case is relevant in the discussion of a former employee using his memory in future employment pursuits.

[33]La. R.S. 51:1401 *et seq.*

[34]*Weighing & Control*, 1989 WL 6011 at * 1. This case involved no written employment contract between the parties, nor was there any non-solicitation agreement.

[35]*Id.*

existence, and further that in his trade, customers are developed by "smokestack chasing," which is searching for any facilities which have a smokestack or a pile of coal or other bulk material and then soliciting their business.  The defendant argued also that these customers often required bids or quotes from several different companies; thus, these customers could not be considered the exclusive customers of plaintiff.[36]

The court found that, "[i]n the absence of a specific non-competition agreement, a former employee is allowed to rely on his memory and on the general information he acquired while working for his former employer in soliciting customers."[37]  Further, the court held:

> Under the circumstances of this case, Mr. Williams' mental knowledge, from years of employment with Weighing & Control Services, Inc., of the names and addresses of the plaintiff's customers are not trade secrets since they are easily ascertainable and generally available to the public.[38]  Louisiana courts have consistently declined to issue an injunction against a former employee's solicitation of customers when the former employee relied on his memory and did not have a list.[39]

---

[36] *Id.*

[37] *Id.* at *2, citing *National Oil Service of Louisiana, Inc.*, 381 So.2d at 1274.

[38] *Id.*, citing *Servisco v. Morreale*, 312 F.Supp. 103, 105 (E.D. La. 1970).

[39] *Id.*, citing *Servisco*, 312 F.Supp. at 106 and cases cited
                                    (continued...)

The Court finds that L&B did not have a formal customer list for the following reasons: (1) it could not and did not produce such a list at L&B's corporate deposition; (2) the testimony of Malinda Causey establishes that there was no one formal list, other than the handwritten lists "paper clipped together"; (3) there is no evidence the list "paper clipped together" was given to defendant; and (4) the testimony of L&B employee John Causey stated he simply kept customer information in his head.[40]  However, even if the Court would find that L&B did have a formal customer list subject to the confidentiality provision, the final result would not change for the reasons set forth below.

Malinda Causey testified that she believed Busby could not have contacted L&B customers without a list of contact information because she did not believe he could have remembered all of the numbers.[41]  Even accepting this conclusion as true, nothing prohibited Busby from using the Internet or the phone book to look up customers or simply driving around his area.  In fact, Malinda Causey admitted in her deposition that customers of L&B could easily be located by driving down the road in Alabama or looking in

---

[39](...continued)
therein; *Huey T. Littleton Claims Service*, 497 So.2d at 94.

[40]Deposition of John Rayfield Causey, Rec. Doc. No. 39, Exhibit 3, p. 12, lines 19-22.

[41]Deposition of Malinda Causey, p. 49, lines 4-12.

the phone book.[42]  Further, it is clear that Action Resources was already engaged in business with some of the L&B customers Busby allegedly solicited.  Thus, Busby would not have needed L&B contact information for those customers that Action Resources already did business with prior to Busby's employment change.  In fact, the record reflects that 10 of the 25 to 30 L&B customers Busby allegedly solicited were also customers of Action Resources prior to Busby's hire.[43]  Thus, the contact information for several L&B customers was readily available to Busby through the resources and prior business relationships of his new employer.

The Court must also note that the deposition testimony of John Causey, Malinda Causey's husband, discredits Malinda Causey's representation that in her opinion Busby could not have remembered the contact information for all the customers.  John Causey testified that he calls on "most all of them," when asked which of the particular L&B customers he is assigned.[44]  When asked by defense counsel, "[b]ut insofar as the customers are concerned, you keep that information in your head?", John Causey answered, "Yeah."[45]  John Causey's testimony that he called on "most all" of L&B's customers and kept their information in his head clearly

---

[42]*Id.* at p. 76, lines 8-13.

[43]Deposition of Jerry Busby, p.74, lines 2-8.

[44]Deposition of John Causey, p. 12, lines 7-9.

[45]*Id.* at p. 12, lines 19-22.

contradicts Malinda Causey's testimony that Busby could not have remembered the contact information for the L&B customers to which he was assigned.

Even if the Court found that a customer list existed, there is simply no evidence and no eye witness account that Busby took any customer lists from L&B upon his resignation, or that he did not use his memory and professional experience to contact customers of L&B. The plaintiff attempts to place the burden on the defendant to prove that he did **not** take the lists. However, the burden of proof is on the plaintiff to prove its case and plaintiff may not rely on its pleadings to defeat a motion for summary judgment. The mere fact that plaintiff claims a credibility determination is warranted does not prevent the Court from not granting summary judgment. The Court should also note that "taking" the information involved herein is not specifically prohibited by the employment contract. Thus, if the plaintiff cannot even present sufficient summary judgment evidence to create a material issue of fact that Busby <u>took</u> the information, which the Court notes is not even specifically prohibited by the employment agreement, it cannot reasonably be inferred from the evidence that Busby in fact used such information in a manner that would divulge, disclose, or communicate the information to a third party in violation of the employment contract.

The Court must also note for the record that L&B's own actions

surrounding this litigation do not support the alleged "confidential" nature of the information it seeks to protect. L&B filed such rate lists and customer lists as attachments to depositions and affidavits in the **public record** of this court, available for anyone to see. If L&B was so concerned about protecting the secrecy of such information, it would have filed such materials under seal. The nonchalance in allowing such claimed "confidential information" to become so voluntarily and readily available to the public discredits L&B's contention that such information is legally protected by the employment contract.

### b.   Drivers Lists

L&B contends the testimony of Malinda Causey creates a material issue of fact as to whether Busby took confidential drivers lists from L&B upon his resignation. Plaintiff also contends the fact that Action Resources recruited at least 11 of L&B's drivers, and more than 25% of Action Resources' drivers were formerly employed by L&B, creates a material issue of fact as to whether Busby violated his employment agreement with L&B.

As noted earlier, Malinda Causey testified that she had no evidence that Busby took any lists home with him on the day he left L&B.[46] She testified that several drivers told her Busby had called

---

[46]Deposition of Malinda Causey, pp. 47-48.

them and one driver told her Busby attempted to recruit him.[47] However, the contract and other evidence in this case, and the applicable jurisprudence clearly show Busby was not prohibited from contacting and soliciting customers or drivers/employees of L&B in his new employment with Action Resources.

With respect to the drivers of L&B, the record reflects that Busby worked with these men on a daily basis for over six years. He did not need a list of their names or numbers in order to locate and contact these drivers to discuss their employment status and desire to remain with or leave L&B.  Thus, this information, which was both within the memory and experience of Busby and readily available to the public by simply looking in the telephone book or Internet directory, is not confidential information covered by the confidentiality clause under the facts of this case.

Plaintiff argues that the affidavits and deposition testimony it has presented require a credibility determination by the Court that is not proper on a motion for summary judgment.  However, under the applicable jurisprudence, the Court is not precluded from granting summary judgment based on the evidence submitted in this case.  Under binding jurisprudence, "[a] dispute about a material fact is 'genuine' if the evidence would permit a reasonable jury to

---

[47]*Id.* at p. 50-51.

return a verdict for the non-moving party.[48]  The Court must draw all <u>reasonable</u> inferences in favor of the non-moving party."[49] However, the Court emphasizes that "not all disputes or all inferences are reasonable, and the court is not obliged to accept mere assertions.  Thus, once the moving party initially has shown 'that there is an absence of evidence to support the non-moving party's cause,'[50] the non-moving party must produce 'specific facts' showing a genuine factual issue for trial."[51]  Further, "[t]he non-moving party cannot rest on mere conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments, none of which will substitute for specific facts showing a genuine issue for trial."[52]

The Court finds that relevant portions of the deposition testimony of plaintiff's witnesses are based upon speculation, assumptions, and hearsay.  In fact, some of plaintiff's witnesses offered deposition testimony that is contradicted by its own

---

[48]*Williams v. Roy O. Martin Lumber Co., LLC*, 51 Fed.Appx. 483, 2002 WL 31319337 at *2, quoting *Anderson v.Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[49]*Id.*, citing *Anderson*, 477 U.S. at 255 (emphasis added).

[50]*Id.*, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[51]*Id.*, citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[52]*Id.*, citing *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002).

witnesses.  Furthermore, the affidavits relied upon by plaintiff attach documents which were asked for, but not produced, at the time of plaintiff's corporate deposition.  The plaintiff states several times in its opposition that certain facts may be "inferred" from plaintiff's assertions and submitted affidavit and deposition testimony.  The Court finds that plaintiff has presented nothing more than conclusory allegations, speculation, unsubstantiated assertions, and seeks improbable inferences such that summary judgment in favor of the defendant is proper under the facts of this case.[53]

### c.    Price lists/Charts

L&B alleges that Busby possessed confidential rate quotes and charts which "disappeared" when he left L&B.[54]  Plaintiff bases this allegation on the deposition and affidavit testimony of Malinda Causey and Jody Guillory.  Malinda Causey testified that she saw Busby remove the rate quotes and charts from his desk the day before he left L&B, and they were not in his desk when she cleaned the desk out following defendant's resignation.[55]

Primarily, L&B contends the affidavit of Jody Guillory and

---

[53]The Court wants to make it abundantly clear that it did not determine or weigh the credibility of the witnesses in making its decision herein.

[54]Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, Rec. Doc. No. 37, p. 8.

[55]Deposition of Malinda Causey, p. 51.

deposition exhibits to the corporate deposition of Action Resources show that Busby took the rate information from L&B.  Specifically, L&B contends that the two documents identified as Exhibit 12 in the deposition of Action Resources show a list of the rates charged to Olin Chemical, a former customer of L&B, by Action Resources.  L&B asserts an explanation why the rate sheets identified as Exhibit 12 can be read as the same type jobs done by L&B.[56]  L&B contends that because several corresponding jobs start with the same base rate, this shows that Action Resources was using L&B's rates schedule.  Although L&B charged a 2% surcharge while Action Resources added a 4% surcharge, L&B further contends the only way Action Resources could have L&B's rate schedule would be through Busby.

---

[56]"The chart reflects the amount charged for each job. Starting with the 'Caustic' charts, one of the charges is the exact same figure on both attachments 1 and 2, specifically the job hand marked 'A' to 'Billingsly' for $459.00.  Most of the other prices from Action Resources on Attachment 2 are rounded off and slightly lower than those rates charged by L&B on Attachment 1; such as items marked 'E', 'F', 'G', 'K', 'L', 'M', 'N', 'O', and 'P'.  Then there are items 'B', 'C', 'D', 'H', 'I', and 'J' which are priced higher than L&B's price but also demonstrate that Action Resources was using L&B's rate schedule.  In these latter jobs, a base rate was established by L&B.  That base rate is recorded in the column marked 'rate' on attachment 1.  Thereafter a surcharge was added to it of 4% for increased insurance charges.  However, for their customer Olin, L&B agreed to reduce the surcharge to 2%.  The difference between L&B's final charge and Action Resources final charge is that although Action started with the same base rate, Action added on a 4% surcharge and L&B made a 2% surcharge.  In other words, Action made a mistake.  However, in all of these, both L&B and Action Resources started with the same base rate.  That can be shown by adding 2% to L&B's base rate to get L&B's final price and by adding 4% to L&B's base rate to get Action Resources final price."  Plaintiff's Opposition, p. 10.

L&B also contends that Action Resources would have to use the formula which L&B uses to calculate its rates in order to have the same base rates for the same jobs. L&B also contends this formula, which involves a sum of money being multiplied by various components of the formula to yield the final rate, is complex and not likely to be memorized. L&B acknowledges Busby's testimony that he helped create the rates at L&B and he knew and remembered the rates. However, L&B contends that the rates were created before Busby was employed by L&B. L&B also argues that even if Busby could have memorized such a formula, the use of such information to the benefit of his new employer is a violation of his contract since the rates schedules and price charts are not generally available to the public.[57]

Even if the Court assumes, without so holding for purposes of this motion, that the documents compared can be treated as the same job, plaintiff's argument fails. What such a comparison actually reveals to the Court is that plaintiff spent a great deal of time attempting to make two very different documents appear to be "exactly" the same. First, the documents refer to the jobs in different terms, so Jody Guillory has altered the original documents in his own handwriting "so that we can more easily compare the rates for those jobs which L&B and Action Resources did

---

[57] *Id.* at p. 11.

for the same company."[58]  L&B also contends that Action Resources' chart showing charges for a certain transport is similar to L&B's chart for the same job, stating: "Each is exactly the same or differs only in a few cents, due probably to how many places the calculator rounded off."[59]  The Court believes these assertions are drastically conclusory and plaintiff takes great liberty with its characterization of these documents.

Busby notes that Guillory produced rate schedules attached to his affidavit accompanying L&B's memorandum which were not produced at L&B's corporate deposition.   Further, Busby contends that Guillory's attachment comparisons and L&B's "convoluted discussion of rates" do not reference several transport rates to other cities.[60]  Busby contends such comparisons are omitted because they would not support L&B's argument.

Further, Busby points to Malinda Causey's deposition testimony that L&B changed its rates from $2.50 per mile to a per hundred

---

[58]*Id.* at p. 9.

[59]*Id.* at p. 11.

[60]Supplemental Memorandum in Support of Motion for Summary Judgment, Rec. Doc. No. 39, p. 3: "Guillory's 'Attachments 1a, 1b, and 2' comparison and L&B's convoluted discussion of rates omit any reference to rates for transport to Claiborne, Theodore, and Valley, Alabama; Cantonment, Florida; and Aberdeen and Pascagoula, Mississippi.  The comparison and discussion of 'Attachments 3 and 4' omit any reference to Panama City, Florida and McDonogh, Georgia.  Perhaps, it is because those comparisons do not support L&B's claim."

weight.[61]  Busby contends a rate of $2.50 per mile is different from the formula described by Jody Guillory.   When L&B changed its rates, it lost business from Olin.   Action Resources was already doing business with Olin Chemical prior to Busby's employment with Action Resources.   Thus, Busby contends it is completely logical that Olin would go with Action Resources for a more favorable transport rate since Olin already had a business relationship with Action Resources, irrespective of Busby's new employment with Action Resources.

Finally, Busby argues that any loss of Olin Chemical's business by L&B was the direct result of L&B's own rate change which increased its charges to Olin by 13 percent.[62]  Thus, Busby argues that even if L&B's allegations regarding the rate lists and charts are true, which Busby denies, L&B cannot show any related damage caused by Busby. Without showing damage caused, Busby contends L&B cannot prevail on this claim.

The Court is not persuaded that Busby took and used the pricing information of L&B based on the evidence offered by plaintiff for the same reasons discussed earlier in this opinion. The Court also finds that plaintiff's analogies have not created a material issue of fact, even if Busby was using pricing experience

---

[61]*Id.*, quoting Deposition of Malinda Causey, p. 81, line 17 through p. 85, line 17.

[62]*Id.* at p. 4, citing Causey Deposition, pp. 81-85.

or knowledge which he gained while employed by L&B.

In *Konecranes, Inc. v. Robaina*, plaintiff - whose business manufactures, installs, and services overhead cranes - sought to enjoin the defendant, a former employee, from using Konecranes' vendor sources and service and maintenance processes in future employment.[63]  The defendant's job with Konecranes had given him access to business particulars such as confidential pricing information, profit margins, customer development information, Konecranes' business practices, training and service manuals and service and maintenance processes.[64]  While this case is factually distinguishable from the case before the court, the following analysis from the Eastern District of Louisiana is relevant to the case at bar:

> "[A] former employee who enters business in competition with his former employer **necessarily utilizes the experience he acquired and the skills he developed while in his former employment.**" *Littleton* at 794, *citing National Oil Service of Louisiana, Inc. v. Brown*, 381 So.2d 1269 (La. App. 4th Cir. 1980).  Robaina began working for Konecranes when he had over 20 years of experience. Presumably, Konecranes hired Robaina because he was an experienced electrical engineer who would apply his years of experience to the job.  Now that Robaina is no longer with Konecranes, **plaintiff cannot expect the defendant to forget or ignore any knowledge he has picked up along the way or the contacts he**

---

[63]1998 WL 812447 (E.D. La., Nov. 17, 1998).

[64]*Id.* at *1.

**has made.**[65]

Similarly, Busby testified that he did not take any lists of rates quotes for customers from L&B because as a terminal manager, he created the rate lists and would not need a list to remember such information.  Whatever knowledge and experience Busby gained in pricing at L&B could be used in any future employment. Likewise, as addressed in earlier sections of this opinion, Busby's contacts do not have to be forgotten or ignored.

The Court finds that L&B has simply failed to produce summary judgment evidence that Busby physically took or used any confidential information of L&B in a manner which would divulge, disclose or communicate such information to a third party, beyond the speculation and assumptions of plaintiff's witnesses. Furthermore, the comparisons plaintiff asks the Court to make regarding pricing documents are illogical and unsupported by the evidence.  As such, summary judgment shall be granted in favor of the defendant on this issue.

### 2.    The Best Efforts Requirement

L&B claims that Busby solicited other L&B employees to work for a competitor trucking company while he was still employed by L&B.  L&B alleges this is a violation of paragraph 2 of the employment agreement which requires that Busby utilize his "best efforts" in the performance of his duties at L&B.  Specifically,

---

[65] *Id.* at *3 (emphasis added).

the provision states as follows:

> BEST EFFORTS OF EMPLOYEE: Mr. Busby agrees to perform
> faithfully, industriously, and to the best of Mr. Busby's
> ability, experience, and talents, all of the duties that
> may be required by the express and implicit terms of this
> Agreement to the reasonable satisfaction of L&B.  Such
> duties shall be provided at such place(s)as the needs,
> business, or opportunities of L&B may require from time
> to time.[66]

Busby argues that this allegation is based solely on one
conversation he had with Malinda Causey, her husband John, and
another L&B employee, over a year before Busby actually left L&B
for Action Resources.    Busby contends that, even if this
conversation was considered a breach of the "best efforts"
provision of his employment contract, L&B suffered no damages for
this alleged breach because those employees remain L&B employees
today.

In *American Machinery Movers, Inc. v. Machinery Movers of New
Orleans, LLC, et al,*[67] a former employer sued its former employee
for misappropriation of trade secrets, tradename infringement, and
unfair trade practices.[68]  Relevant to the case before the Court,
the district court for the Eastern District of Louisiana addressed
plaintiff's claim under LUTPA that the defendant began soliciting

---

[66]Rec. Doc. No. 34, Exhibit 2, p. 1, ¶ 2.

[67]136 F.Supp.2d 599 (E.D. La. 2001).

[68]The Court again recognizes that plaintiff in the present case
has not made claims under LUTPA, but the case analysis is relevant
for the reasons given previously in this opinion.

customers away from the plaintiff prior to his resignation. The court held as follows:

> "[W]ithout a restrictive agreement, at the termination of [his] employment, an employee can go to work for a competitor or form a competing business. **Even before termination, the employee can seek work or prepare to compete.**"[69]  Moreover, an employee may solicit customers from his former employe[r] as long as he does so based on his memory, experience, or personal contacts, rather than through the use of confidential information of the former employer.[70]

The court found that the plaintiff had submitted no evidence that the defendant had used confidential information to solicit the former employer's customers, stating: "Mere suspicion cannot overcome free market competition."[71]

Similarly, the Court finds that "mere suspicion" is all that has been presented through the arguments, affidavits, and deposition testimony offered by the plaintiff to support this allegation. The jurisprudence shows that Busby was entitled to prepare to compete in the workforce against L&B even while he was still employed. However, even if the Court were to find that Busby in fact violated the best efforts clause of the employment contract

---

[69]*American Machinery*, 136 F.Supp.2d at 604, quoting *United Group of National Paper Distributors v. Vinson*, 27,739 (La. App. 2 Cir. 1/25/69),666 So.2d 1338, 1347 (emphasis added).

[70]*Id.*, citing *First Page Operating Under the Name and Corporate Entity, Groome Enterprises, Inc. v. Network Paging Corporation*, 628 So.2d 130, 132-33 (1993).

[71]*Id.*

by recruiting the Creola terminal employees prior to his resignation, the Court agrees with defendant that L&B suffered no damages since those employees did not leave their employment with L&B and remain with L&B to this day.

Thus, summary judgment is proper in favor of the defendant on the best efforts claim under the law and facts of this case.

## III. Conclusion

For the reasons set forth above, the Court finds that there are no genuine issues of material fact which would preclude the Court from granting summary judgment in favor of defendant Jerry Busby on all claims asserted by the plaintiff L&B Transport, L.L.C. in this matter.

Therefore;

IT IS ORDERED that Jerry Busby's motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's claims be and each are hereby dismissed with prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, February 12, 2008.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

Doc#44751                          31